# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37827-2010

| | | |
|---|---|---|
| IN THE MATTER OF JOHN DOE, A CHILD UNDER EIGHTEEN YEARS OF AGE | ) ) ) ) | Boise, September 2010 Term |
| _____ | ) ) | 2010 Opinion No. 135 |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | Filed: December 22, 2010 |
| | ) | Stephen W. Kenyon, Clerk |
| Petitioner-Respondent, | ) ) | |
| v. | ) ) | |
| JOHN DOE I, | ) ) | |
| Defendant. | ) ) | |

Appeal from the Magistrate Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. The Hon. Carolyn Minder, Magistrate Judge.

The judgment of the magistrate court is <u>reversed</u>.

Capitol Law Group, PLLC, Gooding, for appellant. Randall S. Barnum argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Deena A. Layne, Deputy Attorney General, argued.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment terminating parental rights. The Department of Health and Welfare had obtained in a prior action a final child support order stating that the appellant was the father of the child. The Department later brought this action to terminate his parental rights on the ground that he was not the father of the child without seeking to set aside the prior order. Because there was no statutory basis for terminating appellant's parental rights, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

When Child was born, his Mother and John Doe were living together but were not married. Child's birth certificate filed a few days later did not identify his father, but he was given John Doe's surname.

When he was about eight months old, Child was taken to the hospital with physical injuries that were indicative of child abuse. On October 21, 2008, he was taken into custody by the Idaho Department of Health and Welfare (Department) and was placed into foster care. On the same day, Mother told Department's social worker that John Doe was not Child's father, but she claimed not to know who the father was.

On October 23, 2008, this action was filed under the Child Protective Act. In an affidavit of a Department social worker filed with the petition, the social worker stated that the biological father of Child was unknown and recounted that both Mother and John Doe had stated that John Doe was not Child's father.

On the same day that the child protection proceedings were commenced, Mother and John Doe signed under oath an "Acknowledgement of Paternity Affidavit" stating that John Doe was Child's biological father. They then filed that document with the Bureau of Health Statistics and Vital Records, which is part of Department.

On October 31, 2008, the court issued an order giving temporary custody of Child to Department. The court's factual findings supporting the order included the finding that Mother and John Doe had told Department's social worker that John Doe was not Child's biological father and that Mother denied knowing the name of the biological father or how to contact him.

Child remained in Department's custody, and the proceedings in this case continued under the Child Protective Act. A report filed on November 8, 2008, by a Department social worker named a man whom the social worker believed may be Child's biological father. The social worker contacted him, and he acknowledged that he likely was Child's biological father, but he would not agree to submit to a paternity test.

Department commenced a separate court action against Mother and John Doe to require them to pay child support for Child. A final order in that case was entered on February 17, 2009. It stated that Mother "is the legal mother" and John Doe "is the legal father" of Child, and it ordered both of them to pay support for Child.

On May 4, 2009, Department filed a petition in this action to terminate the parental rights of Child's biological father. He had previously executed a consent to termination, and on May 12, 2009, a judgment was entered terminating the parent and child relationship between him and Child.

On October 28, 2009, Department filed a petition in this action to terminate the parent and child relationship between Child and both Mother and John Doe. The petition alleged that John Doe was Child's "Legal Father" and that Department sought termination because John Doe "is not the biological father of the child." It alleged that Mother's parental rights should be terminated because she "has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority."

The matter was tried to the court, and on June 18, 2010, it entered an order granting the petition to terminate. The court found that the parent and child relationship between John Doe and Child should be terminated because he was not the biological father of Child and termination was in Child's best interests. The court found that Mother's parental rights should be terminated because she had abused and neglected Child and termination of her rights was in Child's best interests. On June 18, 2010, the court entered a judgment terminating "the parental rights" of Mother and the "'legal father' status" of John Doe. He timely appealed to this Court, but Mother did not appeal.

## II. ANALYSIS

The only issue on appeal is whether the magistrate court erred in terminating the parent and child relationship between John Doe and Child. John Doe contends that he is the father of Child based upon the order entered in the child support proceeding and that Department failed to prove any statutory ground for terminating his parental rights. Department counters that John Doe is not a parent because he is not the biological father of Child and that the final order it obtained against John Doe for child support did not establish that he was the parent of Child, even though the order stated that he "is the legal father" of Child. Department did not explain how John Doe could be the "legal father" but not the parent of Child or how he could be liable for child support if he was not a parent.

The Termination of Parent and Child Relationship Act, Idaho Code §§ 16-2001 through 16-2015, provides for terminating the parent and child relationship. Idaho Code §§ 16-2003 &

3

16-2010(1). In order to terminate a parent and child relationship, there must be a parent. The Act defines a "parent,"[1] and by doing so it excludes other relationships with a child from being that of a parent. The issue raised by the parties is whether John Doe is a parent of Child.

John Doe cannot meet the statutory definition of "parent" applicable to proceedings to terminate a parent and child relationship because he is neither Child's adoptive nor biological father. Idaho Code § 16-2002(11)(b), (c) & (d). His only basis for asserting he is Child's parent is that the final child support order obtained by Department stating that he "is the legal father" of Child precludes Department from relitigating the issue of paternity in this case. *See Waller v. State, Department of Health and Welfare*, 146 Idaho 234, 192 P.3d 1058 (2008), and Idaho Code § 7-1124. The magistrate did not rule upon the preclusive effect of that order. We need not address that issue because the judgment below must be reversed regardless of the legal effect of the order.

If the child support order determined, as between Department and John Doe, that he is a parent of Child, Department was required to prove a statutory ground for terminating that parent and child relationship. Termination "requires two findings: first, that one of the statutory bases for termination is shown and, second, that termination of parental rights is in the best interests of the child." *Doe v. Doe*, 149 Idaho 392, 396, 234 P.3d 716, 720 (2010); Idaho Code § 16-2005(1). The statutory grounds for termination are listed in Idaho Code § 16-2005(1). It is undisputed that there was no statutory ground for terminating John Doe's parental rights and that the magistrate did not find any statutory ground for termination with respect to him. In the final judgment, the magistrate terminated "the parental rights" of Mother and "the 'legal father' status" of Father. It is not clear what the magistrate meant by "'legal father' status." If that equates with parental rights, Department failed to prove any statutory basis for terminating those rights, and the judgment must be reversed. *In re Adoption of Doe*, 143 Idaho 188, 141 P.3d 1057 (2006).

---

[1] Idaho Code § 16-2002(11) states:

> "Parent" means:
> (a) The birth mother or the adoptive mother;
> (b) The adoptive father;
> (c) The biological father of a child conceived or born during the father's marriage to the birth mother; and
> (d) The unmarried biological father whose consent to an adoption of the child is required pursuant to section 16-1504, Idaho Code.

4

If the child support order did not establish, as between Department and John Doe, that John Doe is Child's parent, then the judgment terminating his parental rights must still be reversed. "The underlying premise in a parental rights termination action . . . is that the defendant parent has some parental right to his or her child, which should be terminated. . . . Only after a parental interest has been identified can a court properly evaluate whether this interest may be terminated." *Doe v. Roe*, 142 Idaho 202, 204-05, 127 P.3d 105, 107-08 (2005). If a party in a termination proceeding is not a parent, a court cannot terminate his or her nonexistent parental rights. The court can only enter an order stating that the person has no parental rights. *Id*. at 207-08, 127 P.3d at 110-11. The judgment entered by the court in this case did not state that John Doe had no parental rights. It stated that the court terminated his "'legal father' status," whatever that was. Therefore, the judgment must be reversed.

In this proceeding brought by Department, the magistrate could not determine that John Doe had no parental rights without addressing the effect of the final order in the child support case. The final judgment stating that the court terminated John Doe's "'legal father' status" could be read as vacating the child support order stating that he "is the legal father" of Child. However, the magistrate expressly held that it was not doing so. It stated that it assumed the State would move to set aside the child support order in another proceeding.

It is also possible that the magistrate intended the term "legal father status" to mean some legal relationship other than that of a parent. The magistrate found that "the fraudulently secured Order of Child Support creates an 'interest' in the child which this court shall treat as a lawful one until the Child Support Order is set aside by a separate action." The magistrate also referred to John Doe's "lawful 'interest' in this child." It is unclear what this interest is, but a proceeding under the Termination of Parent and Child Relationship Act does not provide for terminating some relationship other than that of a parent.

### III.  CONCLUSION

The judgment of the magistrate court terminating appellant's "'legal father' status" is reversed. We award costs on appeal to appellant.

Justices BURDICK, J. JONES, W. JONES and J. Pro Tem KIDWELL **CONCUR**.