IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40670

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| TERMINATION OF THE PARENTAL | ) | |
| RIGHTS OF JOHN (2013-02) DOE. | ) | Boise, May 2013 Term |
| ----------------------------------------------------- | ) | |
| JOHN DOE (2013-02), | ) | 2013 Opinion No. 83 |
| | ) | |
|    Plaintiff-Appellant, | ) | Filed: July 12, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| IDAHO DEPARTMENT OF HEALTH & | ) | |
| WELFARE and SUE WALCH, Guardian | ) | |
| ad litem, | ) | |
| | ) | |
|    Defendants-Respondents. | ) | |

Appeal from the Magistrate Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Carolyn Minder.

The judgment of the magistrate court is affirmed.

Alan E. Trimming, Ada County Public Defender, Boise, for Appellant.

Hon. Lawrence Wasden, Idaho Attorney General, Boise, for Respondents.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

A biological father challenges a magistrate judge's order "nonestablishing" his parental rights. On appeal, he contends that he was entitled to an evidentiary hearing at which to prove that he was a "parent" as defined by I.C. § 16-2002(11).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological father of a baby boy ("Son"). Doe was in prison when Son was born. Son's mother ("Mother") was living with another man ("Boyfriend"), and Son was given Boyfriend's surname. In April of 2011, Son was placed in the custody of the Idaho Department of Health and Welfare (the "Department") after he suffered grievous injuries indicative of severe

1

physical abuse. This triggered an ongoing proceeding under the Child Protective Act[1] ("CPA") in which Boyfriend was listed as the putative father. However, in July of 2011 Doe submitted to a paternity test, which showed a 99.99% probability that he is Son's biological father. Doe was then substituted as the putative father in the CPA proceeding. He received assistance from appointed counsel and was served with documents in the case.

Before the paternity test, Doe had no contact with Son. There is evidence in the record that Doe thereafter visited with Son, completed a parenting class, and maintained intermittent employment. However, there is also evidence that he failed to obtain a sufficient income to support a child, to secure housing suitable for a child, and to refrain from using methamphetamine. There is also evidence that his numerous probation violations often landed him in jail, which in turn prevented him from visiting Son.

In April of 2012, the Department submitted a Progress Report for Permanency Hearing in which it requested the termination of both Doe and Mother's parental rights. The magistrate denied the request on the grounds that Doe and Mother were "deserving of more time to demonstrate their ability to provide a safe, stable home for their child." However, in October of 2012, Mother voluntarily consented to the termination of her parental rights.

In November of 2012, the Department submitted a new petition, requesting for the first time an "Order of Non-Establishment of Parental Rights." The Department averred that Doe was "not the 'parent' of [Son] as defined in Idaho Code § 16-2002(11) as [he had] failed to assert any parental rights to [Son] either by statute or by timely establishing some relationship to [Son]." An extremely brief hearing was held on the Department's motion. Doe's appointed counsel apparently was under the impression that he would not be allowed to call witnesses or present other evidence in order to show that Doe was a parent as defined in I.C. § 16-2002(11). Doe's counsel represented to the magistrate that he had not advised Doe how to "proceed with the putative father registry or a paternity action," and instead suggested to Doe that he "should seek independent Counsel and do that."

In January of 2013, the magistrate judge entered her Findings of Fact, Conclusions of Law and Nonestablishment of Paternity. She held as a matter of law that Doe had "waived and surrendered any right in relation to [Son] and shall be barred from thereafter bringing or

---

[1] I.C. §§ 16-1601 to -1643.

maintaining any action to establish his paternity of [Son]." The magistrate judge then entered a Final Judgment from which Doe timely appealed.

### III. ISSUE ON APPEAL

A.    Has Doe shown that under the Idaho Code he was entitled to an evidentiary hearing prior to the "nonestablishment" of his parental rights?

B.    If not, has Doe shown that his due process rights were violated?

### IV. STANDARD OF REVIEW

"Both constitutional questions and questions of statutory interpretation are questions of law over which this Court exercises free review." *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 563, 566, 249 P.3d 362, 365 (2011) (quoting *Stuart v. State*, 149 Idaho 35, 40, 232 P.3d 813, 818 (2010)).

### V. ANALYSIS

**A.    Doe has not shown that under the Idaho Code he was entitled to an evidentiary hearing prior to the "nonestablishment" of his parental rights.**

"Mere biology does not create a father with legal rights and responsibilities to a minor child." *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 88, 90, 244 P.3d 232, 234 (2010) (quoting *Doe v. Roe*, 142 Idaho 202, 205, 127 P.3d 105, 108 (2005)). Rather, in order to be a parent in the eyes of the law, a biological father must satisfy the definition of parenthood in I.C. § 16-2002(11). The crux of Doe's argument is that he may have shouldered sufficient responsibility for Son to qualify as a parent under I.C. §§ 16-2002(11)(d) and 16-1504(2)(a); that a "nonestablishment" order is tantamount to a revocation of parental rights; and that he was entitled to an evidentiary hearing at which to prove his status as a parent. However, even assuming *arguendo* that Doe at some point attained the status of a parent, he nonetheless waived his right to an evidentiary hearing on that question.

The magistrate judge explicitly relied on I.C. § 16-2007(5) in holding that Doe was not even entitled to notice of the proceedings, much less the opportunity to present evidence and arguments. It is therefore bizarre, to say the least, that neither party discusses that provision in any meaningful way in their appellate briefs. Idaho Code section 16-2007(5) provides, in pertinent part:

> Where the putative father has failed to timely commence proceedings to establish paternity under section 7-1111, Idaho Code, and by filing with the vital statistics unit of the department of health and welfare, notice of his commencement of proceedings to establish his paternity of the child born out of wedlock, notice

3

under this section is not required unless such putative father is one of those persons specifically set forth in section 16-1505(1), Idaho Code.

In turn, I.C. § 16-1505(1) provides:

Notice of an adoption proceeding shall be served on each of the following persons:

(a)  Any person or agency whose consent or relinquishment is required under section 16-1504, Idaho Code, **unless that right has been terminated by waiver**, relinquishment, consent or judicial action, or their parental rights have been previously terminated;

(b)  Any person who has registered notice of the commencement of paternity proceedings pursuant to section 16-1513, Idaho Code;

(c)  The petitioner's spouse, if any, only if he or she has not joined in the petition;

(d)  Any person who is recorded on the birth certificate as the child's father, with the knowledge and consent of the mother, unless such right to notice or parental rights have been previously terminated;

(e)  Any person who is openly living in the same household with the child at the time the mother's consent is executed or relinquishment made, and who is holding himself out to be the child's father, unless such rights to notice or parental rights have been previously terminated; and

(f)  Any person who is married to the child's mother at the time she executes her consent to the adoption or relinquishes the child for adoption.

(Emphasis added.)  Subsection (1)(a) redirects us, by implication, to the subsection of Idaho Code title 16, chapter 15, that controls the waiver of parental rights.  That subsection is I.C. § 16-1513(4), which provides in pertinent part:

**Any father of a child born out of wedlock who fails to file and register his notice of the commencement of paternity proceedings** prior to the placement for adoption of the child in the home of prospective parents or **prior to the date of commencement of any proceeding to terminate the parental rights of the birth mother**, whichever event occurs first, **is deemed to have *waived* and surrendered any right in relation to the child** and shall be barred from thereafter bringing or maintaining any action to establish his paternity of the child.  Failure of such filing or registration shall constitute an abandonment of said child.

(Emphasis added.)  As with I.C. § 16-2007(5), neither party discusses I.C. § 16-1513(4) in any meaningful way.

Doe has never contended, either in the magistrate court or in this Court on appeal, that he commenced paternity proceedings before the Department petitioned to terminate Mother's

4

parental rights. Therefore, the magistrate judge correctly held that Doe was not even entitled to notice of the "nonestablishment" hearing, much less the opportunity to present evidence at that hearing. Her decision is reversible only if Doe can show that his due process rights were violated.

**B.    Doe has not shown that his due process rights were violated.**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution commands that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.[2] Here, Doe argues only that his procedural due process rights were violated. "Procedural due process requires that a party be provided with an opportunity to be heard at a meaningful time and in a meaningful manner." *Stuart v. State*, 149 Idaho 35, 49, 232 P.3d 813, 827 (2010) (quoting *Paul v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 134 Idaho 838, 843, 11 P.3d 34, 39 (2000)). We have already made clear that "[p]arental rights are a fundamental liberty interest, constitutionally protected by the Fourteenth Amendment." *In re Doe*, 151 Idaho 356, 362, 256 P.3d 764, 770 (2011). However, we have not yet considered whether the waiver of parental rights pursuant to I.C. § 16-1513(4) comports with due process. The United States Supreme Court has already upheld an analogous New York statute, and therefore I.C. § 16-1513(4) is not constitutionally infirm. *See Lehr v. Robertson*, 463 U.S. 248 (1983).

In that case, Mr. Lehr fathered a child, Jessica. *Id.* at 250. Eight months after Jessica's birth, her mother married Mr. Robertson. *Id.* When Jessica was over two years old, Robertson filed a petition to adopt Jessica. *Id.* The state of New York maintained a "putative father registry" and guaranteed any man registered therein notice of a petition to adopt his putative child. *See id.* at 250–51. At the time Robertson filed his petition, Lehr had not yet filed with the registry. *Id.* at 251. One month later, Lehr, who was not yet aware of the adoption petition, filed a paternity petition in a different county court. *Id.* at 252–53. Although the judge in the

---

[2] Similarly, the Due Process Clause of the Idaho Constitution guarantees that "[n]o person shall . . . be deprived of life, liberty or property without due process of law." Idaho Const. art. I, § 13. Although the content of our state's Due Process Clause is generally the same as that of the Due Process Clause in the federal Constitution's Fourteenth Amendment, it may in some instances be broader. *See State v. Radford*, 134 Idaho 187, 190, 998 P.2d 80, 83 (2000). We recently held that, when interpreting the Idaho Constitution, we should "use federal rules and methodology unless clear precedent or circumstances unique to the state of Idaho or its constitution indicates that Idaho's constitution provides greater protection than the analogous federal provision." *See CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 384, 299 P.3d 186, 191 (2013). Although Doe cites Idaho's Due Process Clause, he does not argue that it provides greater protection than the federal provision; therefore, he waived that issue. *See State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007).

adoption proceeding was aware of the parallel paternity proceeding, he nonetheless entered an order of adoption. *Id.* at 253. After being denied relief by the New York state courts, Lehr appealed to the United States Supreme Court, arguing *inter alia* that the New York statutory scheme violated his procedural due process rights. *Id.* at 253–55.

The United States Supreme Court explained that a biological father does not *ipso facto* have a due process right in his relationship with his child. *See id.* at 262. The Court then reasoned that New York's statutory scheme might not comport with due process if it "were likely to omit many responsible fathers, **and if qualification for notice were beyond the control of an interested putative father**." *Id.* at 264 (emphasis added). However, the right to receive notice of the adoption proceeding was "completely within [Lehr's] control." *Id.* Even if Lehr failed to file with the putative father registry due to his ignorance of the law, the statutory scheme remained valid, because of the state's interest in "expeditiously" and conclusively placing children with adoptive parents. *See id.* at 264–65.

Justice White, joined by Justices Marshall and Blackmun, vigorously dissented. The dissenters' arguments are almost identical to those that Doe advances in this appeal. They criticized the majority for relying on a factual record that was developed in Lehr's absence. *See id.* at 271. They also argued that New York had no valid interest in denying Lehr notice and a hearing where the state had actual knowledge of Lehr's claim of fatherhood. *See id.* at 275. Although these arguments are cogent, they did not persuade a majority of the Court, and thus are counter to binding federal law.

Like Lehr, Doe was not afforded an evidentiary hearing prior to a court order proclaiming that he had no parental rights in his biological child. And, as with Lehr, the lack of an evidentiary hearing was directly attributable to Doe's failure to take steps to ensure his legal recognition as a father. Thus, like Lehr, Doe's due process rights were not violated.

## VI. CONCLUSION

Doe has not so much as alleged that he timely commenced paternity proceedings. Therefore, he was not entitled to an evidentiary hearing at which to establish his parenthood. Moreover, Doe has not shown that the waiver of an evidentiary hearing violated his due process rights. Therefore, the district court's judgment is affirmed.

Chief Justice BURDICK, Justices EISMANN, J. JONES and JUSTICE *pro tem* KIDWELL, CONCUR.

6