**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46739**

|  |  |
|---|---|
| In the Matter of: Jane Doe I, a Child Under Eighteen (18) Years of Age. | ) ) |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) Filed: June 19, 2019 |
|  | ) |
| Petitioner-Respondent, | ) Karel A. Lehrman, Clerk |
|  | ) |
| v. | ) THIS IS AN UNPUBLISHED |
|  | ) OPINION AND SHALL NOT |
| JANE DOE (2019-04), | ) BE CITED AS AUTHORITY |
|  | ) |
| Respondent-Appellant. | ) |
|  | ) |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Blaine P. Cannon, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

Hilverda McRae; Adam J. Ondo, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the magistrate's order terminating Mother's parental rights to her daughter (Daughter). Mother argues the magistrate erred in concluding that Mother had neglected Daughter and that termination of Mother's parental rights was in Daughter's best interests. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Daughter was born in January 2012. When she was five months old, Mother was on probation and asked Daughter's maternal grandmother (Grandmother) to care for Daughter while Mother attended rehabilitation. Although this arrangement was only intended to last forty-five

1

days, Mother did not attend rehabilitation but, instead, went to California to be with Daughter's father (Father). As a result, Grandmother became Daughter's primary caregiver and guardian.

Grandmother, who had struggled for many years with drug addiction, cared for Daughter until November 2015 when Grandmother was arrested for drug trafficking after a pound of methamphetamine was found in her home. Following Grandmother's arrest, law enforcement declared Daughter in imminent danger; a magistrate awarded the Idaho Department of Health and Welfare (Department) temporary legal custody of Daughter; and the Department placed Daughter with a foster family.

The Department opened a child protective case for Daughter, and in January 2016, a case plan (2016 plan) was adopted for Grandmother to perform. This 2016 plan was later revised in May 2016 to include Mother and Father, but Mother did not participate in the 2016 plan because she had absconded from parole and was eventually incarcerated in December 2016. Grandmother, however, completed the 2016 plan, and in February 2017, Daughter returned to Grandmother's care.

In August 2017, Grandmother was again charged with drug-related crimes. As a result, law enforcement once again declared Daughter in imminent danger. After this second declaration, Daughter tested positive for the presence of methamphetamine; the Department opened this second child protection case; and Daughter was again placed with her prior foster family. In November 2017, another case plan (2017 plan) was adopted for Grandmother, Mother, and Father to perform.

When this 2017 plan was adopted, Mother remained incarcerated until May 2018, at which time she was released on parole. During this brief respite from incarceration, Mother lived in a motel, failed to attend a substance abuse evaluation, had four visits with Daughter and attended Daughter's school play. Thereafter, Mother absconded from parole, used methamphetamine, and was arrested in July 2018. Mother has been incarcerated since then, although she anticipates being released on parole in July 2019. Mother, however, admits she has previously been released on parole three different times and has absconded each time.

The Department filed a petition in August 2018 to terminate the parental rights of Mother, Father, and Grandmother, alleging they each had neglected Daughter. On December 5, 2018, the magistrate held an evidentiary hearing on the petition. Mother, Father, Grandmother, Daughter's foster parent, and three Department employees testified at this hearing.

2

Following the evidentiary hearing, the magistrate issued a "Decision and Order Terminating Parental Rights," which it subsequently amended. The magistrate ruled Grandmother was not a proper party because she had no parental rights. The magistrate also terminated Mother's parental rights, ruling that she had neglected Daughter and that it was in Daughter's best interests to terminate Mother's rights. Mother timely appeals.[1]

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). The Fourteenth Amendment to the United States Constitution protects this interest. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Because a fundamental liberty interest is at stake, a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* Idaho Code § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Clear and convincing evidence is generally understood to be evidence indicating the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006).

On appeal, this Court examines whether the magistrate's decision terminating parental rights is supported by substantial and competent evidence, which means evidence a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The substantial evidence test also requires a greater quantum of evidence in cases, such as this case, where the magistrate's findings must be supported by clear and convincing evidence, instead of a mere preponderance. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Further, objectively supportable grounds must support the magistrate's termination decision. *Doe*, 143 Idaho at 346, 144 P.3d at 600. This Court will indulge all reasonable inferences in support of the magistrate's termination decision. *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65.

---

[1] The magistrate also terminated the Father's parental rights, and he separately appeals that termination.

ANALYSIS

## A.    Substantial and Competent Evidence Supports Finding of Neglect

Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Mother argues the magistrate erred in concluding Mother neglected Daughter. We disagree. The magistrate's decision terminating Mother's parental rights is supported by substantial and competent evidence. Mother gave custody of Daughter to Grandmother, left for California, and did not return to care for Daughter. Mother has been either in California or incarcerated for most of Daughter's life. Grandmother has struggled with drug use for sixteen years, and as a result of Grandmother's struggles and Mother's absence, Daughter has tested positive for the presence of methamphetamine and has twice been placed in foster care, necessitating two separate child protection actions and two case plans. Mother's participation in

those case plans has been minimal because of her repeated incarcerations. Mother admits she "has been released [from incarceration] three times on parole and has absconded each time." Presently, Mother remains incarcerated.

This evidence supports the magistrate's conclusion that Mother neglected Daughter. As the magistrate concluded, Mother's "involvement with and support of [Daughter] has been very limited." As a result, Mother has not provided Daughter with "proper parental care and control." *See* Idaho Code § 16-1602(31)(a) (defining "neglect" as child who is without proper parental care and control). "[Mother's] neglect of [Daughter] is a result of both [Mother's] conduct and omission[s]" and occurred because of Mother's incarcerations "which [were] due to her voluntary choice to use illegal drugs and then not comply with the rules of parole."

Challenging these conclusions, Mother argues the magistrate failed to "take into account [the] practicalities" of her "situation," i.e., that she was incarcerated for much of Daughter's life and, as a result, her ability to be involved and to support Daughter was "severely restricted." In support of this argument, Mother relies on *Doe*, 137 Idaho 758, 53 P.3d 341.

In that case, Doe was in prison at the time of his son's birth and had never seen his son. *Id.* at 759, 53 P.3d at 342. As a result, the magistrate found Doe had abandoned and neglected his son. *Id.* at 761, 53 P.3d at 344. Doe appealed. *Id.* at 759, 53 P.3d at 342. The Idaho Supreme Court noted that, during Doe's incarceration, he had made an effort to maintain contact with his son including (among other things) sending Christmas and other gifts, writing his son's maternal grandmother, and calling the caseworker numerous times. *Id.* at 761, 53 P.3d at 344. Based on these efforts, the Court ruled that:

> Reality must play a part at two levels: 1) Doe was severely restricted in what he could do. Within that context he tried to establish a relationship. 2) The Department did little or nothing to assist in that effort. The Department focused on the best interest of the child--laudable in the abstract but without regard for the parental rights possessed by Doe.

*Id.* at 762, 53 P.3d at 345. Importantly, the Court further noted that "Doe had completed his prison sentence" and that "the record stop[ped] short of evidence as to Doe's conduct since his release." *Id.* For this reason, the Court reversed and remanded the case "for further proceedings including . . . evidence of Doe's conduct since his release from the penitentiary." *Id.*

Mother's case is distinguishable from *Doe*. In contrast to *Doe*, Mother has not been continuously incarcerated for the entirety of Daughter's life. Rather, Mother has had multiple opportunities when on parole to establish a relationship with Daughter, but instead, each time she

has chosen to resume her drug use and to abscond from parole. Also contrary to *Doe*, the Department in this case attempted to involve Mother in the case plans, including contacting her and scheduling a meeting with her for which she failed to appear because she had absconded from parole. Because of these distinctions, *Doe* is inapplicable in this case.

## B.     Termination Is in Daughter's Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Mother also argues the magistrate erred in concluding that termination of her parental rights is in Daughter's best interests. Again, we disagree. The magistrate properly considered and found numerous factors supporting the conclusion that the termination of Mother's parental rights serves Daughter's best interests. These factors include that Daughter is presently "with a [foster] family that loves her and wants to adopt her"; "is in a home with a safe and stable environment"; "is well cared for"; "has bonded with her foster family"; has "ameliorated" her behavioral problems; and is "doing well in school." The magistrate also considered that Mother has a continued history of methamphetamine use; has repeatedly been incarcerated; has repeatedly absconded from parole; and is unwilling to comply with the rules of parole. Substantial and competent evidence supports these findings, and the magistrate's conclusion that the termination of Mother's parental rights is in Daughter's best interests.

Mother disputes the magistrate's best-interests conclusion and argues the magistrate "focused primarily on one factor . . . [Mother's] incarceration" and did not mention Mother's efforts to support Daughter. Specifically, Mother identifies those efforts to include child support for Daughter while incarcerated, visits with Daughter while on parole, letters to Daughter from

6

prison, drug counseling, parenting classes, and the anticipated July 2019 release date. In support of Mother's argument that the magistrate ignored these efforts, Mother relies on *Schultz v. Schultz*, 145 Idaho 859, 187 P.3d 1234 (2008), a case addressing a child's custody in the context of a divorce action.

In *Schultz*, the Idaho Supreme Court reversed a magistrate's order requiring that a mother either return from Oregon to Idaho with her child or relinquish custody of the child to the father. *Id.* at 861, 187 P.3d at 1236. The Court criticized the magistrate for basing its best-interests analysis on a single factor: the distance between the child and the father created by the mother's unilateral out-of-state move. *Id.* at 865, 187 P.3d at 1240. Further, the Court noted several statutory factors the magistrate failed to consider in determining the child's best interests. *Id.* at 862, 187 P.3d at 1239 (citing I.C. § 32-717(1)).

In contrast to *Schultz*, however, the magistrate in this case considered the appropriate factors when analyzing Daughter's best interests, including Daughter's improvement while in foster care, Mother's history with substance abuse, her lack of efforts to improve her situation, and her continuing problems with the law. Further, although Mother contends the magistrate ignored Mother's efforts when considering Daughter's best interests, the magistrate specifically considered all but one of the factors Mother identified, including that "child support was garnished from [Mother's] earnings" while she was in prison, "[w]hile [Mother] was released [from prison] she had four visits with [Daughter] and attended a school play," "[Mother] completed drug counseling in prison," [M]other took two parenting classes in prison," and "[Mother] anticipates release on parole in July 2019."

The only fact Mother identified, which the magistrate did not mention, is Mother's letters to Daughter from prison. Those letters, however, do not appear to have been significant in either nature or number. Rather, during the evidentiary hearing Mother testified only that:

Q.     Did you send letters?
A.     Yeah, I sent letters, and they sent me pictures and they would send me cards and colorings that [Daughter] would draw for me.

This evidence of Mother's letters to Daughter from prison neither alone nor in conjunction with Mother's other limited efforts overcome the substantial and competent evidence supporting the magistrate's conclusion that termination of Mother's parental rights is in Daughter's best interests.

7

Finally, we disagree with Mother's assertion that the magistrate erred by not considering Grandmother's "recent progress" while on probation and "the effect that termination would have with regard to [Grandmother]" in evaluating Daughter's best interests. The magistrate correctly concluded Grandmother was not a proper party to the proceedings terminating parental rights. "If a party in a termination proceeding is not a parent, a court cannot terminate his or her nonexistent parental rights. The court can only enter an order stating that the person has no parental rights." *Idaho Dep't of Health & Welfare v. Doe I*, 150 Idaho 140, 143, 244 P.3d 1226, 1229 (2010). Further, Mother fails to cite any authority to support her assertion that Grandmother's progress while on probation should be considered in determining Daughter's best interests. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (holding that a party waives an issue on appeal if either argument or authority is lacking).

## IV.

## CONCLUSION

Substantial and competent evidence support the magistrate's findings that Mother neglected Daughter and that termination of Mother's parental rights is in Daughter's best interests. Accordingly, we affirm the magistrate's order terminating Mother's parental rights.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.